[Civ. No. 3243. Second Appellate District, Division Two.—December 30, 1920.]

## JULIUS CONRAD, Respondent, v. H. J. HAUSER, Appellant.

[1] PROMISSORY NOTE—DEFENSE—FRAUD—PLEADING—INJURY.—Where, in an action to recover money paid as indorser on a promissory note given for the purchase price of corporation stock, the defend-ant admits the execution of the note but attempts to avoid payment to the plaintiff on the ground that the note was procured by false representation, the answer should allege injury or det-riment to the defendant from the fraud.

[2] Id.—Appeal—Findings—Conflicting Evidence. — Where in such
action all the issues of fraud tendered by defendant's answer are
resolved in favor of the plaintiff on conflicting evidence, the find-
ings cannot be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Isidore B. Dockweiler and Dockweiler & Mott for Appel-
lant.

James Donovan for Respondent.

THOMAS, J.—On December 31, 1915, at Los Angeles,
California, this defendant, together with two others—Charles
W. Fox and F. H. Evans—made, executed, and delivered a
certain promissory note by the terms of which each promised
to pay to the Halberg-Mier Automatic Press Company, or
order, the sum of $18,000, the note being set out *in haec
verba* in the complaint. On the same day this note was
transferred, by the payee therein named, to the Commercial
National Bank of Los Angeles. Prior to the actual transfer,
however, the bank refused to discount or to accept the note
unless the same was indorsed by some person or persons
in whose financial ability it had confidence. Plaintiff, hav-
ing previously been requested by the makers of the note
to act in the capacity of indorser, and admittedly fulfilling
the requirements above referred to, signed his name on the
back thereof, thereby guaranteeing payment of the same.
Upon maturity of the paper, defendant refused to pay it,
or any portion thereof, although the other two makers,
Fox and Evans, paid their proportionate share, i. e., each
the sum of $6,000. Thereupon the bank called upon plain-
tiff to make good on his indorsement to the extent of the
amount remaining unpaid on the note, and, rather than
stand a suit thereon, the latter paid the sum of $6,000 to the
holder thereof. The action is brought, not upon the note,
but to recover of Hauser the amount so paid by plaintiff
in the former's behalf.

The board of directors of the Halberg-Mier Automatic
Press Company was composed of the following named per-

sons: J. T. Merrill, Julius Conrad (plaintiff), H. S. Ryerson, Charles W. Fox, and F. H. Evans, the first three of whom were also the president, vice-president, and secretary-treasurer, respectively, of that company. By his answer, defendant admits the execution of the note, but attempts to avoid payment of the sum so paid in his behalf by plaintiff on the ground that the two officers first above named, as such officials, directors, and agents of said company, procured defendant's signature thereto, together with the signatures of Fox and Evans, by means of the following false and fraudulent representations, to wit: That there were 550,005 shares of the capital stock of said company issued and outstanding, and that there were still 449,995 shares of the same stock undisposed of; that said company was "free from debt and that it had no liabilities whatever"; that said company owned and controlled the patent of a certain printing-press known as the Halbert-Mier Automatic Press; that the company was in need of money and that it would require a large amount for the purpose of purchasing machinery and equipping a plant for the purpose of manufacturing and selling such printing-press; that it was the intention of said company to sell a portion of the treasury stock, using the money so obtained in placing its product on the market; that if this defendant, together with Fox and Evans, would purchase 30,000 shares of such treasury stock at a price of sixty cents per share, executing their note in payment therefor, they, the officers mentioned, had arranged with the Commercial National Bank of Los Angeles to discount the note for said company, and that the latter would deposit the money so received with said bank to its credit, such sum to be used in purchasing and installing machinery in a plant to be operated for the purpose of manufacturing and marketing the printing-press, the patent to which was controlled by it; and that in the event the money was so secured, the machinery necessary to fully equip the plant would be purchased and installed within ninety days, whereupon the company would commence operations. The answer further avers that defendant relied upon these representations, and, believing them to be true, was induced to and did, together with Fox and Evans, purchase said shares of stock, and execute the note in question in payment therefor, whereupon the note was by the bank dis-

counted and the money received therefrom deposited to the credit of said company.

Defendant further alleges, upon information and belief, that at the time said representations were made all of the capital stock of said company was issued and outstanding, and that said Merrill, the president, and this plaintiff, as vice-president thereof, well knew that there were not at that time 449,995 shares of said company's capital stock still unissued; that at said time the company had outstanding liabilities to the extent of several thousand dollars; that said company did not own or control the patents to the printing-press aforesaid; and that each and all of said representations and statements were made to induce this defendant and others to buy said stock and to sign the note in controversy, but for which false and fraudulent representations that instrument would not have been executed.

Finally, defendant contends that no stock has ever been issued to him, or to Fox or Evans, and that no portion of the money received from and deposited in the bank referred to has been used by said company for all or any of the purposes for which it was represented that it would be used; but that, on the contrary, said Merrill, the president, and this plaintiff, caused the same to be diverted and used for purposes other than as stated, and that the directors of said company neglected their duty as such, allowing the moneys to be so misappropriated.

The court found in favor of plaintiff on all the issues, and judgment was entered accordingly. There was a motion for new trial, which was denied. Defendant appeals from the judgment.

[1] It may be observed that defendant's answer fails utterly to allege any injury to or detriment sustained by him. It is not charged that there was any want or failure of consideration, or that the stock was worth less than the price paid for it, or that it would have been worth more had the alleged false representations been true. Nor is it alleged that defendant tendered or offered to return that which he had received. "Where fraud is attempted to be pleaded as a defense, no defense to a note is shown by answer alleging that, by false representations of plaintiff's officers, defendant was induced to make the note . . . given . . . no damage being shown." (*Farmers & Merchants'*

*Bank* v. *Richards,* 6 Cal. Unrep. 19, [53 Pac. 439].)    There was no evidence offered tending to show that the stock purchased by Hauser was not worth the amount for which he executed.his note in payment therefor.

Appellant argues that no stock was delivered to him.    The evidence shows that three certificates, each for 10,000 shares, were issued, one to Fox, one to Evans, and one to Hauser; that said stock was treasury stock; that each stock certificate was inclosed in an envelope with the name of the respective owner thereon; and that the envelope containing appellant's certificate was further marked, "To be called for."    When Hauser signed the note, he became entitled to 10,000 shares of the corporate stock—which was in fact issued in his name and held subject to his order; and if it was not delivered to him, it was his own fault.    At any rate, the certificate is evidence of ownership of such shares, and, under the facts of the case, title thereto undoubtedly was in him.

Appellant contends that he was to receive 10,000 shares of the treasury stock, but that the company had none. Plaintiff, however, maintains that the company did, in fact, have such stock at that time.    The evidence sustains plaintiff's contention, it appearing that there were 450,000 shares of such stock in the treasury at the time of the execution of the note.    [2]    In fact, all of the issues of fraud tendered by defendant's answer were resolved in favor of the plaintiff, on conflicting evidence; and under these conditions, we cannot disturb those findings.

We fail to find anything in the record which appears in any way to have prejudiced appellant's rights.

Judgment affirmed.

Finlayson, P. J., and Weller, J., concurred.